IN RE APPROPRIATION OF EASEMENTS
FROM LEAS ET AL.

(No. 80-J-30—Decided November 6, 1981.)

Mr. Richard L. Powell and Ms. Susan C. Powell, for appellees John D. Leas, Sr., et al.

Mr. William J. Brown, attorney general, Mr. Donald J. Guittar and Mr. Daniel G. Gehres, for appellant David L. Weir, Dir.

LYNCH, P.J. Defendant-appellant, David L. Weir, Director of the Ohio Department of Transportation, is appealing the verdict of the jury in an appropriation case and the judgment of the court of common pleas approving such verdict which assessed the total compensation for plaintiffs-appellees as $39,241 based as follows: property take $3,935; damage to residue $34,606; and temporary take $700.

Plaintiffs own land with a frontage of one hundred fifty feet on State Route 22 in the village of Wintersville on which there is a building in which they conducted an electrical supply and fixture store. Defendant appropriated part of the frontage of plaintiffs' property for the purpose of widening State Route 22. Defendant's testimony was that the value of the property to be appropriated and the damage to the residue amounted to $20,675.

Prior to the widening of State Route 22, plaintiffs' building was approximately thirty-six feet from the west corner to the edge of the paved road and was approximately thirty-four feet from the east corner to the road. However, at that time, the distances between plaintiffs' building and the existing right-of-way of the highway were approximately nineteen and one half to twenty feet from the west corner and approximately seventeen and one half or eighteen feet from the east corner. After the highway was widened, the distance from the west corner of plaintiffs' building to the edge of the pavement was approximately nineteen to twenty feet from one corner and sixteen feet from the other corner. The frontage of plaintiffs' property taken by the defendant was 13.55 feet at the west end and 2.59 feet on the east end.

Defendant's first assignment of error is that the court of common pleas erred to the prejudice of defendant in that it overruled defendant's challenge for cause of juror Bolitho and allowed her to serve on the jury.

During the voir dire examination of prospective jurors, defendant exhausted his peremptory challenges before prospective juror, Mrs. Naomi J. Bolitho, was called. When Mrs. Bolitho was asked if she would agree that the state is entitled to take her property for a needed purpose such as a highway, she answered: "I suppose."

When asked whether it would cause her any problem to sit on the jury for this appropriation case, she answered: "I honestly can't tell you unless it would happen to me. I couldn't tell you." Upon further questioning she stated that she did not like the right of the state to appropriate property.

The trial court then gave an instruc-

tion as to the right and need of the government to appropriate property. When Mrs. Bolitho was again questioned whether she believed that the state should have the right to appropriate property, she answered, "I believe they do."

At a bench discussion plaintiffs' counsel stated that he thought that Mrs. Bolitho had "covered it" and the trial court stated as follows:

"I have a feeling that she's giving the answer that she thinks I want her to give, giving this long explanation and that seemed to be the attitude. That's what I don't too much care about."

Plaintiffs' counsel then questioned Mrs. Bolitho about her belief in the Constitution and laws of the state of Ohio and then asked this question:

"* * *, could you sit on this jury and decide this case, be fair to the Department of Transportation, which is the State of Ohio, and to be fair to the property owner, Mr. and Mrs. Leas."

Mrs. Bolitho responded "yes" to the above question.

Defendant's counsel then moved that Mrs. Bolitho be dismissed as a juror for cause to which the trial court responded as follows:

"I think I'm going to have to grant that because I've already put on the record my opinion that I feel she's only answering the questions because I more or less strong-armed her into doing it. It seems to me any verdict that wouldn't be agreeable with the State would be appealable."

Plaintiffs' counsel strenuously objected to the dismissing of Mrs. Bolitho as a juror. Then the trial court stated as follows:

"With what I've said that's on the record if the property owner still wants her on and with all the problems that that entails, I'll let her serve then and I'll overrule the objection."

R.C. 2313.43 provides, in pertinent part, as follows:

"* * * any petit juror may be challenged on suspicion of prejudice against or partiality for either party * * *. The validity of such challenge shall be determined by the court and be sustained if the court has any doubt as to the juror's being entirely unbiased."

In *Lingafelter* v. *Moore* (1917), 95 Ohio St. 384, the court, in pertinent part, stated at pages 390-391, as follows:

"* * * Under the provisions of [G.C.] Section 11438 [now R.C. 2313.43] it is mandatory upon the court to sustain a challenge if it has any doubt as to the juror being entirely unbiased. * * * [To] overrule the challenge of plaintiffs in error after their peremptory challenges had been exhausted, thereby denying them their constitutional right to an impartial jury, warrants a reversal of the judgment below."

This case can be distinguished from cases coming under Crim. R. 24(B)(9) because this is not a case where subject juror had a previously formed or expressed opinion with reference to the outcome of this case but rather such juror had an expressed bias against the right of the state of Ohio to appropriate property even though she recognized the right of the state to appropriate property.

In this case the trial judge expressed his doubts of the impartiality of Mrs. Bolitho and indicated that he thought about sustaining defendant's motion to dismiss her for cause as a juror. However, after strenuous objection by plaintiffs' attorney, the trial court overruled the motion.

Pursuant to R.C. 2313.43 and the *Lingafelter* case, we hold that the trial court committed error in overruling defendant's challenge for cause of Mrs. Bolitho. Therefore, we sustain defendant's first assignment of error.

Defendant's second assignment of error is that the court of common pleas erred to the prejudice of the appellant in denying appellant's motion in limine and permitting testimony concerning vibra-

tions, dust, litter, and dirty windows allegedly emanating from the highway.

Although the widening of State Route 22 substantially reduced the distance of plaintiffs' building from the edge of the highway from approximately thirty-four to thirty-six feet to approximately sixteen to twenty feet, the fact is that most of the newly constructed highway was built on the existing right of way which was approximately seventeen and one half to nineteen and one half feet from plaintiffs' building prior to subject widening.

Prior to trial, defendant filed a motion in limine for the court to instruct plaintiffs and all their witnesses that no mention of noise or vibrations, fumes or noxious odors and unsightliness of the highway (which were not peculiar to the residue of plaintiffs' land but which were, instead, common to the public) was to be made. At the commencement of the trial, plaintiffs' counsel stipulated and agreed that their witnesses would not get into the area of noise, fumes, noxious odors or unsightliness of the highway, but stated that they strenuously objected to limiting their testimony in regards to vibrations because their testimony would be that there are approximately seven hundred hanging electrical fixtures and chandeliers in plaintiffs' building which is the only type of property on the whole length of the highway with such a condition; therefore, the problem of vibrations was peculiar to their property and not to the other properties along the highway.

Both parties agreed that the only area that was not agreed to was the subject of vibrations. The trial court overruled defendant's motion as to vibrations and stated that the property owner would be permitted to bring relevant evidence as to vibrations and that counsel for the state could make objections to any specific question.

During the trial, John Criss, plaintiffs' real estate expert, testified that an additional loss of value to the residue was that the new four-lane highway would be close to the building and that it would bring dust and vibrations into the building. Defendant's objection to such testimony was overruled by the trial court. Mr. Criss continued to testify that the business in such building was peculiar as to all the other buildings on State Route 22 because plaintiffs were primarily in the fixture business; that the vibrations from heavy trucks affected the glass fixtures and chandeliers; that dusting two hundred fixtures was a problem; and that he estimated such damage to the residue caused by vibrations and dust to be $12,606. Mr. Criss further testified over the objection of defendant's counsel that in the wintertime trucks would splash snow and salt on the plate glass windows of the front of the building; that it would cost $5 to have such windows cleaned; and that this would happen about twenty times a year.

We do not believe that the trial court committed any error in overruling defendant's motion prior to trial. Plaintiffs' counsel stated that the business conducted in subject building involved many hanging electrical fixtures and chandeliers which would be affected by vibrations and that the problem of vibrations was peculiar to their property and not to the other properties along the highway. Defendant contends that the trial court should have required plaintiffs to present testimony about such problem outside the hearing of the jury, but defendant has not cited any authority to support this contention and we are not aware of any. Defendant did not raise any legal question as to whether the fact that plaintiffs' business of displaying electrical fixtures and chandeliers might be affected by vibrations more than other properties along the highway was a proper item to be considered under the category of damage to residue either at the time prior to the trial or when evidence on this issue was presented during the trial.

However, when Mr. Criss indicated that he considered as an item of damage

the dust and vibrations from traffic on the highway to plaintiffs' hanging electrical fixtures and chandeliers, defendant's objection to such testimony was overruled by the trial court. Defendant also objected to Mr. Criss' testimony about splashes from the highway causing dirty windows on plaintiffs' building. Defendant's objections to such testimony raise the question of the admissibility of such evidence in an appropriation case where an existing highway is being widened.

The most recent appropriation case that has come to our attention and that has some pertinency to this case is *Richley* v. *Jones* (1974), 38 Ohio St. 2d 64 [67 O.O.2d 78], which held that a landowner could not present evidence and argument that the construction of a median strip would reduce his access to, and damage, the remaining property. In *Richley,* the court stated, in pertinent part, at pages 68-69:

"Consequential damages are generally non-compensable on the theory that: '* * * Whatever injury is suffered thereby is an injury suffered in common by the entire community; and even though one property owner may suffer in a greater degree than another, nevertheless the injury is not different in kind, and is therefore *damnum absque injuria.*' "

We hold that subject testimony as to dust, vibrations and dirty windows caused by traffic on subject newly constructed highway under the facts of this case are consequential damages to the construction of such highway and are noncompensable pursuant to the *Richley* case.

In *State, ex rel. Fejes,* v. *Akron* (1966), 5 Ohio St. 2d 47 [34 O.O.2d 58], the court held that damage to real property caused by earth tremors caused by the use of trucks and heavy machinery in the building of a nearby highway does not constitute a *pro tanto* "taking" of such property by a municipality within the contemplation of Section 19, Article I of the Ohio Constitution.

In *Fejes,* the court on page 50 quoted from *McKee* v. *Akron* (1964), 176 Ohio St. 282, 284 [27 O.O.2d 197], as follows:

" 'It should be noted that this section [Section 19, Article I of the Constitution of Ohio] limits the right to compensation to cases where private property is *taken* for public use. If the framers of the Ohio Constitution intended to require compensation whenever property was damaged by governmental activity, they could have so provided in unmistakable language. Many states have done so. Their constitutions provide in substance that private property shall not be taken for *or damaged* by public use without compensation. See 2 Nichols, Eminent Domain, 376, Section 6.1 [3] n.29.

" 'The determination in every case as to whether an Ohio property owner is entitled to compensation for alleged injury to his property resulting from governmental activity hinges on the question of whether there has been a taking of his property. The word, "taken," connotes something different from damage to property, and to construe it as meaning "damaged" would be strained and unnatural. We find that, under the language of the Ohio Constitution, something more than damage to his property is necessary to entitle the owner to compensation. Thus, for plaintiff to recover she must show that there has been a taking of her property. Proof that her property was damaged is not in itself enough to entitle her to compensation. See *Bedford* v. *United States,* 192 U.S. 217, 224; *Transportation Co.* v. *City of Chicago,* 99 U.S. 635, 642.' See, also, 18 American Jurisprudence 1028, Section 384." (Emphasis *sic.*)

In *McKee,* the court stated, at page 286, that since the plaintiff therein, as a member of the public, shared in the benefits of the public improvement, the plaintiff must also share in its incidental burdens.

For the foregoing reasons, we sustain defendant's second assignment to the extent of the admissibility of evidence of

dust, vibrations and splashes from the newly constructed highway as an item of damages to the residue of the property.

The judgment is reversed and the cause is remanded for a new trial.

*Judgment reversed and cause remanded.*

O'NEILL and DONOFRIO, JJ., concur.